

July 11, 2013

Carroll, Burdick & McDonough LLP

44 Montgomery Street
Suite 400
San Francisco, CA
94104-4606

415.989.5900
415.989.0932 Fax
www.cbmlaw.com

Los Angeles
Sacramento

**VIA ECF FILING**

Matthew F. Miller
Direct Dial: 415.743.2216
mmiller@cbmlaw.com

Honorable Laurel Beeler

Re: *AMEC Environment & Infrastructure, Inc. v. Geosyntec Consultants, Inc., et al.*
Case No. 12-2973 TEH (LB) – Joint Letter Brief re AMEC's Motion to Compel

Dear Judge Beeler:

The parties submit this joint letter brief concerning Plaintiff's discovery requests to Defendants. The parties have been unable to resolve their differences despite extensive meet and confer efforts and respectfully request the Court determine the issues as set forth below.[1] This case involves allegations Geosyntec and the individual defendants raided numerous AMEC employees, interfered with AMEC's contracts with clients and relationships with prospective clients and misappropriated thousands of AMEC files.

**1.  Geosyntec's Solicitation of AMEC Employees:**  AMEC's interrogatories and document requests seek information and documents concerning Geosyntec's solicitation and recruiting of AMEC employees. Defendants refuse to produce any documents or provide any information for AMEC employees who Geosyntec solicited but did not hire. *See* Ex. A (Resp. to Doc. Req, 2, 16-21 and 29-30 to Geosyntec and 7-10 and 13-15 to the Individual Defendants) and *B* (Resp. to Interrogatory 3). In the interest of brevity, AMEC has only attached responses for one of the Individual Defendants as an example for the Court's reference.

**Plaintiff's Position**: "This litigation stems from Geosyntec's scheme to raid multiple groups of AMEC employees and their client relationships … ." FAC, Dkt. 31, ¶ 15. "Geosyntec's scheme to hire key AMEC employees, was designed to gain access to AMEC's key employee relationships, ongoing contracts, client relationships, prospective contracts and to otherwise compete unlawfully with AMEC." FAC ¶ 50. Solicitation of a competitor's employee is actionable "if either the defecting employee or the competitor ... is guilty of some concomitant, unconscionable conduct." *Readylink Healthcare v. Cotton*, 126 Cal.App.4th 1006, 1019 (2005); *see also Metro Traffic Control v. Shadow Traffic Network*, 22 Cal.App.4th 853, 859 (1994); *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 255 (1968).

The burden is on Defendants to justify the basis for withholding the requested information. *In re Subpoena to Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (citation omitted). Documents already produced (in response to other discovery) demonstrate Geosyntec selectively targeted key employees and made direct efforts to have those AMEC employees bring AMEC

---

[1] The parties substantially narrowed the issues in dispute and Defendants have agreed to supplement certain responses. AMEC has not yet received those responses and therefore reserves the right to raise them with the Court should they be insufficient.

CBM-SF\SF593048.9

Honorable Laurel Beeler
July 11, 2013
Page 2

clients to Geosyntec. In July 2011, Paul Brookner emailed Randy Brandt and Neal Durant regarding AMEC employee Mike Beck and AMEC client Presidio Trust: "Mike believes he will have approximately $400K of revenue through 2012 on Trust project. ... [W]e'd have an approximate 15 month period of Mike being billable with work he brings to Geosyntec." Durant replied "Can you please ask Mike why he thinks that, if he were to move to Geosyntec, the client would contract Mike/Geosyntec, rather than [AMEC]?" Beck was ultimately never hired by Geosyntec. In its initial disclosures, Geosyntec identified Brandt, Broonker, and Durant as witnesses with knowledge of Geosyntec's "recruiting and/or interviewing" of former AMEC employees and intends to have Brookner and Durant testify about Geosyntec's purported "lack of intent or effort ... to encourage or assist employees to breach their obligations to AMEC." If Geosyntec chose not to hire certain AMEC employees because they could not guarantee AMEC's business would come to Geosyntec, that would be material to this case.

Geosyntec's documents also reveal multiple requests to solicited but not yet hired employees for business plans listing current clients and revenue potential for such clients. The AMEC employees obliged and submitted client lists – quintessential trade secrets.[2] *See e.g., Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012); *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514 (1997). AMEC is entitled to discover if other solicited but not hired employees similarly broke AMEC's confidence and facilitated the misappropriation of AMEC's trade secrets. Moreover, numerous documents produced within just the last two weeks show several Raided Employees both solicited and assisted Geosyntec to solicit AMEC employees to join Geosyntec in direct violation of their non-solicitation and non-compete agreements with AMEC. To the extent Geosyntec argues that the complaint must contain more specific allegations regarding Geosyntec's raiding, which AMEC submits is unwarranted, AMEC will amend its complaint to allege specific and direct allegations against these employees given that it has now learned, through the course of discovery, that they violated the terms of their non-compete/non-solicitation agreements. To the extent AMEC needs to amend the complaint to obtain such discovery, AMEC will do so, but nonetheless requests that the Court order Geosyntec to respond to these outstanding requests.

Geosyntec's internal communications also demonstrate it engaged in a campaign to intentionally disrupt AMEC's relationships with employees and key clients. *See Reeves v. Hanlon*, 33 Cal.4th 1140, 1154 (2004). In an e-mail to Geosyntec's CEO, Rudy Bonaparte, regarding AMEC's concern over losing another employee to Geosyntec, Bice exclaimed, "I love this!" Bonaparte echoed the same sentiment: "I also wouldn't mind getting into a bit of a rumble with [AMEC employee] Tony [Daus]." The requested discovery is also relevant to Geosyntec's affirmative defenses, which allege AMEC is "solely and directly at fault for causing the past and continuing exodus of its own employees ..." Answer, Dkt. 33 (No. 12).

**Defendants' Position:** In June 2008, AMEC – a massive, international engineering firm with over 10,000 employees worldwide – acquired Geomatrix, a small consulting company, and tied up its shareholders with three year non-competes. In 2011, when those non-competes expired, a large number of former Geomatrix employees who were unhappy with the bureaucracy, size, and culture of AMEC began running for the doors. Over a fifteen month period, Geosyntec hired 18

---

[2] AMEC is in the process of amending its trade secret designation to include documents from Defendants' ongoing production.

Honorable Laurel Beeler
July 11, 2013
Page 3

of those employees in five offices across three states and Canada. Scores of former Geomatrix employees joined other competitors. This lawsuit represents AMEC's effort to stem the tide of departures, and the discovery requests at issue are part and parcel of its plan. AMEC's fishing expedition is not warranted or justified by the claims in this action.

There are no allegations by Plaintiff that any non-hired employees (or former AMEC employees outside the six individual defendants) were involved in any "theft" or "other acts of unfair competition." The First Amended Complaint does not allege that any AMEC employees- who have been recruited but never joined- are bound by valid non-compete agreements, removed trade secrets, gained unauthorized access to their AMEC computers, or began competing with AMEC before they resigned. Nor is Geosyntec alleged to have interfered with the employment relationships between those at-will employees and AMEC. In sum, there is no actionable conduct alleged against these "non-hired" AMEC employees.

The lone case cited by Plaintiff during the meet and confer efforts, *ReadyLink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, is distinguishable on many levels. The individual defendant, Cotton, who was enjoined from soliciting plaintiff's employees was a former employee of plaintiff and was contractually prohibited for three years following termination from soliciting plaintiff's employees. Furthermore, Cotton solicited employees who were under contract with his former employer for a specified term. Cotton also signed a declaration admitting misappropriation. Here, neither Geosyntec nor the actually hired employees are under any contractual obligation to refrain from competing with AMEC or recruiting at-will employees from AMEC, and AMEC has also not alleged that any recruited employee was under any specified term employment contract. Employees who are not bound by valid non-competes are free to work for a competing business, and cannot be precluded from lawfully hiring former colleagues. *See Thomas Weisel Partners LLC v. BNP Paribas* (N.D. Cal. 2010) 2010 WL 546497; *Silguero v. Creteguard, Inc.* (2010) 187 Cal.App.4th 60, 68-69 (No actionable wrong is committed "by a competitor who hires away his competitor's employees who are not under contract…"). Defendants note that non-compete and non-solicitation agreements are generally unenforceable in California, and further that AMEC's suggestion that it can simply amend the complaint (again) at this stage of the litigation is problematic, to say the least. In any event, claims that are merely contemplated, but not alleged, cannot serve as a basis for discoverability.

In light of the fact that AMEC did not and cannot allege any harm caused by unhappy employees who explored their options with Geosyntec but did not join its ranks, and cannot cite to any authority that such discussions are wrongful, there is no basis for the discovery AMEC seeks. The information sought is not probative of the claims alleged. While AMEC would probably like to identify – and potentially punish – current employees who have looked for a better job, that is not a valid basis for discovery in this case.

**2.    Oral Communications to AMEC Employees Regarding Prospective Employment:**
Interrogatory 5 seeks Geosyntec's communications with AMEC employees regarding actual or potential employment at Geosyntec. Geosyntec's response to interrogatory 5 simply refers to all documents it has produced or will produce in this case, *en masse*.

**Plaintiff's Position:** No oral communications are identified. The response is deficient given that Geosyntec has produced documents that identify oral communications that occurred during the

Honorable Laurel Beeler
July 11, 2013
Page 4

relevant time period.  It is not sufficient to state that such information can be obtained at deposition.  FRCP 33(b)(3); William W. Schwarzer, *et al.*, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL, ¶ 11:1731 (Rutter Group 2013) (citation omitted).  In its initial disclosures and interrogatory responses, Geosyntec has identified specific employees who it contends were involved in the recruitment and hiring process.  It can hardly claim that it would be overly burdensome to reach out to those specific employees and the Raided Employees concerning communications with AMEC employees regarding actual or potential employment with Geosyntec.

**Defendants' Position:**  Defendants have already gone through substantial efforts to provide AMEC with a list of relevant, non-written communications in response to a similar interrogatory.  *See* Response to Interrogatory No. 4.  To the extent any further communications are documented in emails, Geosyntec is producing those emails as requested.  It would impose a huge and unreasonable burden to ask Geosyntec to interview every Geosyntec employee (thousands) and create an inventory of every telephone call, meeting, and other non-written communication with an AMEC employee over the last three years in which the topic of joining Geosyntec came up.  AMEC has never suggested (before this letter brief) that it would accept a response limited to a subgroup of Geosyntec witnesses.  The discovery of information regarding the recruitment of AMEC employees who actually joined Geosyntec is more reasonably and appropriately sought through the depositions of those former employees, and the Geosyntec personnel who recruited them.  AMEC has scheduled 10 Geosyntec depositions to be completed in less than 30 days and prior to the parties' August 7 mediation, and is well situated to obtain information that is actually probative of its claims through a far less burdensome process.

**3.     Deficient Search Parameters:**  Defendants' proposed custodian list and search parameters (attached as Exhibit C) which the parties agreed to exchange as required by the Court's e-discovery guidelines, are deficient and Defendants have refused to modify them.

**Plaintiff's Position:**  Defendants' proposed custodian list and search terms are inadequate.  The custodian list does not include custodians who are relevant to this case, including Geosyntec employees that Geosyntec identified in interrogatory responses, such as Randy Brandt, who Geosyntec identified as having "knowledge of recruiting, interviewing and/or hiring" 5 former AMEC employees, all referred to in the FAC and two of whom are individual defendants.  The proposed search terms do not contain terms that would be sufficient to capture responsive documents.  For example, they do not include basic terms such as "recruit," "solicit," "misappropriate" or "raid."  They do not include personal email addresses, particularly for those custodians whose email addresses do not include their name (e.g., yosagi@yahoo.com, chezed18@hotmail.com), email domains for clients (e.g., @pos.com) or names or email addresses for consultants to whom the vast majority of communications would have been addressed (e.g., Steve Lemon, Carla Consoli).  They limit searches to the last names of the Raided Employees and will thus exclude internal emails that only refer to first names.  They do not include nicknames or other identifiers used by the custodians to identify the clients or projects at issue in the FAC (e.g., CCH for Columbia College Hollywood, POS for Prudential Overall Supply) or project identifiers (e.g., West Van Buren, Gila River Indian Community).

Geosyntec did not serve its interrogatory and document responses until May 15, after requesting two separate extensions to respond.  It was only then that AMEC learned that Geosyntec had

Honorable Laurel Beeler
July 11, 2013
Page 5

identified numerous additional individuals who should have been included as custodians and refused to produce certain relevant documents responsive to AMEC's requests. Geosyntec inaccurately claims that AMEC raised no concerns about search terms prior to June 3. AMEC met and conferred with Geosyntec. Geosyntec refused to provide search parameters before that meet and confer, as requested by AMEC. AMEC informed Geosyntec that it would further meet and confer regarding such terms thereafter. Geosyntec's productions to date consist largely of documents that were taken from AMEC by the Raided Employees and also contain hundreds of duplicative emails. Geosyntec should be ordered to modify its search terms and bear any costs due to their own failure to abide by the Court's guidelines.

**Defendants' Position:** The parties agreed to exchange search terms on April 26. Geosyntec disclosed its proposed search terms and custodians on that date, and AMEC did not object or raise any concerns. On that basis, Geosyntec proceeded with the expensive and time consuming process of collecting and reviewing ESI. AMEC did not raise any concerns until June 3, claiming that Geosyntec's search terms and custodians are inadequate prior to receiving all of Geosyntec's ESI productions from the search term results. Based on the data that Geosyntec has received to date, the search term parameters are actually *too broad*. Geosyntec identified <u>33 relevant custodians</u> and search terms that more than satisfy its obligation to conduct a *reasonable* search for responsive documents to AMEC's document requests. *See* Guidelines for the Discovery of ESI, § 1.03. To date, Geosyntec has reviewed over 55,000 documents from those search terms and determined that only around 8% are actually responsive. From ESI searches and more targeted searches, Geosyntec has already produced over 200,000 pages to AMEC and continues to produce on a rolling basis. During the in-person meet and confer, the parties agreed to re-visit these issues after AMEC received all of Geosyntec's productions to determine whether there is any basis to further expand the ESI review. Now, AMEC does not want to wait. At this time, there is no basis to add tangentially related custodians or further search terms. If the Court is inclined to do so, AMEC should bear any costs that Geosyntec is forced to incur.

Very truly yours,

Carroll, Burdick & McDonough LLP          Buchalter Nemer LLP

*/s/Matthew F. Miller*                          */s/Richard C. Darwin*

Matthew F. Miller                          Richard C. Darwin
Attorneys for Plaintiff                     Attorneys for Defendants
AMEC Environment & Infrastructure, Inc.     Geosyntec Consultants, Inc., Anton
                                            Arulanantham, Robert Cheung, Brian
                                            McNamara, Joseph Niland, Syed Rehan
                                            and Bruce Travers

## General Order 45 Certification
Pursuant to General Order 45, Mr. Miller certifies that he has approval of Mr. Darwin to file this joint letter brief.

CBM-SF\SF593048.9