UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| AMEC ENVIRONMENT & INFRASTRUCTURE, INC., | No. C 12-02973 TEH (LB) |
| Plaintiff, | **ORDER RE DISCOVERY DISPUTES** |
| v. | **[RE: ECF Nos. 45, 46]** |
| GEOSYNTEC CONSULTANTS INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff AMEC Environment & Infrastructure, Inc. ("AMEC"), which provides environmental consulting, engineering, and construction-related services, sued six former employees and Geosyntec Consultants Inc. ("Geosyntec"), also an environmental consulting and engineering firm, after AMEC employees went to work for Geosyntec. First Amended Complaint ("FAC"), ECF No. 31.[1] This case generally concerns whether the employees took confidential and/or trade secret information and whether the former employees and Geosyntec competed fairly or interfered with AMEC's existing and prospective business relationships. *See id.* The claims include unauthorized access of computer information in violation of 18 U.S.C. § 1030 *et seq.* and California Penal Code § 502 *et seq.*, misappropriation of trade secrets, breach of contract, interference with AMEC's

---

[1] Pin cites are to the electronic case file ("ECF") and the electronically-generated page numbers on the top of the page.

ORDER (C 12-02973 TEH (LB))

contractual relations with its employees and its clients, breach of fiduciary duties, interference with prospective economic advantage, and unfair business practices. *See id.*

The parties have disputes about the sufficiency of the responses to their discovery requests to each other. *See* Joint Letter Briefs, ECF Nos. 45, 46. Geosyntec's disputes are about the sufficiency of AMEC's responses to its contention interrogatories that are designed to illuminate why AMEC's trademark designations are trade secrets that deserve protection. *See* Joint Letter Brief, ECF No. 45. AMEC's disputes are about whether Geosyntec should provide information about its solicitation of AMEC employees it did not hire, whether it should provide its oral (as opposed to just its written) solicitations of employees it did hire, and whether its search terms for e-discovery are sufficient. Joint Letter Brief, ECF No. 46.

The court held a hearing on July 25, 2013. Based on the parties' written submissions and arguments, and for the reasons stated below, the court orders the parties to each designate five trade secrets (for a total of ten) that AMEC must answer before the mediation. The court also orders answers to the contention interrogatory on a schedule pegged to the end of fact discovery, limits and stages Geosyntec's responses for non-hired employees and its oral solicitations on a schedule that makes sense compared to the August mediation, and memorializes the parties' agreement on the record to confer further about the e-discovery issues.

## ANALYSIS

### I. GEOSYNTEC'S CHALLENGES TO AMEC'S INTERROGATORY RESPONSES

AMEC designated trade secrets in 86 pages and identified 387 allegedly misappropriated trade secrets by bates range, the project, and a brief description of the document (e.g., "summary updates to the EPA for the subject site," and "email attaching plant layout for the project"). *Id.* at 2. The trade secrets are documents and communications found in the project files from a half dozen consulting projects. *Id.*; *cf.* FAC, ECF No. 31 at 63-69 (listing five projects in the claim involving interference with prospective economic advantage).

The trade secrets that AMEC identified are in the form of thousands of documents taken from project files, and the files consist of "thousands of pages of data and analysis on environmental remediation of client sites and includes lab reports, field notes, budgeting information, proposals,

contracts, and other files, all of which is specifically identified by project, description and Bates-number in AMEC's Amended Designation." Joint Letter Brief, ECF No. 45 at 3. The "trade secrets constitute AMEC's client lists and customer information, client site information, qualifications, and proposals, billing rates and multipliers, project budgeting information, including costs, historical pricing information and business plans and strategies." *Id.* at 11.

**A. The Interrogatories and Responses**

Geosyntec has three contention interrogatories about the trade secrets identified in the designation. The interrogatories and AMEC's responses are as follows.

*1. Interrogatory No. 1*

Geosyntec's Interrogatory No. 1 asks, "For each trade secret identified in the DESIGNATION, state whether it was a formula, pattern, compilation, program, device, technique, process, or some other type of information." Joint Letter Brief, ECF No. 45 at 1.

AMEC stated in its interrogatory response that its trade secrets are "other information" and "compilations." *Id.* at 1, 11. It said that its trade secrets fall within the following categories: (1) AMEC's client lists and customer information that are valuable because of their secrecy; (2) AMEC's client site information, which is valuable because it is not generally known and is specific information about the clients that allows AMEC to assess whether a site complies with statutes and regulations and tailor its recommendations; (3) AMEC's qualifications and proposals, which include technical solutions for projects, cost estimates, and thus valuable information for identifying and bidding on similar projects; (4) AMEC's billing rates and multipliers, project budgeting information (including costs), and historical project financial information, which provides confidential information about AMEC's budgeting methodology for projects and its staffing practices, all relevant to its ability to submit competitive bids on projects; (4) AMEC's business plans and strategies for current and prospective clients. *Id.* at 11-17.

*2. Interrogatory Nos. 2 and 6*

Geosyntec's Interrogatory No. 2 asks, "For each trade secret identified in the DESIGNATION, describe the independent economic value it had and/or has because it was secret." *Id.* at 4.

Geosyntec's Interrogatory No. 6 asks, "For each trade secret identified in the DESIGNATION,

ORDER (C 12-02973 TEH (LB))   3

state all facts supporting YOUR contention that its misappropriation caused YOU harm." *Id.* at 5.

The issue here is the sufficiency of AMEC's response as to the harm about the misappropriation. In its response to Interrogatory No. 2, AMEC said that the documents were used by Geosyntec, a direct competitor, to gain an unfair advantage. *Id.* at 16. It said that the information in the project files viewed as a whole derived value from being kept secret and not being shared with direct competitors, and the misappropriation harmed AMEC in the form of lost revenue. *Id.* at 17. In its answer to Interrogatory No. 6, AMEC identified specific projects and said that Geosyntec's use of AMEC's confidential information facilitated Geosyntec's securing the projects and resulted in harm to AMEC in the form of lost revenue. *Id.* at 29-30.

**B. Sufficiency of AMEC's Response to Interrogatories**

Rule 33 governs the use of contention interrogatories to discover the factual basis for allegations in a complaint. "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken." *In re eBay Seller Antitrust Litigation*, No. C07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citing *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005)). "In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." *Id.* (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985)). Thus, as a general rule, a party moving to compel responses to contention interrogatories at an early stage in litigation must show that the responses would "contribute meaningfully" to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56. *See In Re Convergent Techns. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985).

The three interrogatories at issue here are designed to flush out what the trade secrets are and why they deserve protection as trade secrets. Geosyntec's argument is that all AMEC did was designate the documents at issue, which is enough to satisfy California Civil Procedure Code § 2019.210's requirement of identifying trade secrets with "reasonable particularity" before discovery. But that initial identification does not show why a trade secret is valuable and needs to be protected.

ORDER (C 12-02973 TEH (LB))   4

Instead, AMEC needs to show what the trade secret is – a formula, pattern, compilation, program, device, technique, or process – and why the specific trade secret has value.

AMEC responds that it cannot do more now. It grouped the types of documents that it considers trade secrets, such as client lists and customer information, site information, qualifications and proposals, billing rates, and project budgeting information (including costs, historical pricing, and business strategies). Joint Letter, ECF No. 45 at 3, 11. It designated the trade secrets at issue. *Id.* at 3. It accuses Geosyntec of using AMEC project files to compete for and get specific projects. *Id.* As to the sufficiency of its responses about the value of the trade secrets, its identification of the economic value is all that it can do now, and anything else is an impermissible early end-run around the expert discovery time periods in the case. *Id.* at 4-5 (citing *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1539 (2007)). It concludes that such contention interrogatories are too early given that fact discovery is still open, facts will be disclosed by Defendants' document productions that a re relevant to the harm suffered, it still is conducting its forensic evaluation of the computers and storage devices that stored the trade secrets, and damages will be the subject of expert reports and testimony. *Id.* at 5. Geosyntec responds that it is not necessarily looking for a dollar figure, but instead it wants more detail about the harm (e.g., Did AMEC lose a client or a particular project?). *Id.* at 4, 5.

The timing of the answers to the contention interrogatories implicates significant case management issues. If the case looked at trial the way it looks now – 387 trade secrets that apparently comprise thousands of documents in the form of project files – it likely would be unmanageable. AMEC necessarily will refine its case by trial or else it will lose its audience. Also, it seems likely it will narrow its proof, possibly to specific documents in a project file tied to an expert analysis about the economic harm that attended their use. Contention interrogatories start that narrowing of issues now. At the same time, AMEC points to its forensic analysis of what was taken, how that affects its damages theory, and how the answers will be illuminated through fact and expert discovery. AMEC also has a duty to supplement its responses. That is an argument about why the contention interrogatories are too early.

Another issue is the timing of answers that narrow issues with the private mediation now

ORDER (C 12-02973 TEH (LB))      5

scheduled for early August. Ten depositions are being conducted before that mediation, but according to Geosyntec, depositions of recruiters (which is at least part of the deposition process) do not illuminate the harm that AMEC suffered. If AMEC does not provide more context now about its voluminous designations, there may not be enough information about the damages and harm to allow a meaningful settlement analysis by either party. This is argument in favor of requiring responses to the contention interrogatories now.

The case schedule also is a factor in examining when contention interrogatories are appropriate. The case was filed in June 2012. Fact discovery closes on November 4, 2013, expert disclosures are on December 20, 2013, rebuttal disclosures are on January 4, 2014, expert discovery closes on January 27, 2014, and trial is on February 18, 2014. As described above, AMEC has to whittle the case down, and contention interrogatories provide that process. Waiting too long makes the pretrial process chaotic and also may affect the second chance at settlement with Judge Laporte that the district judge ordered as part of the case management schedule.

A final issue is fairness. Geosyntec also suggested at the hearing and in the briefs that AMEC, a huge company, is burying it, a smaller competitor, with a huge amount of information that is not useful, and the suggestion is that this delay is a strategy that disadvantages Geosyntec. The court cannot tell whether that is true or not, but as discussed earlier, waiting too long means that issues are not narrowed sufficiently to facilitate settlement and, failing that, an orderly trial.

To balance all of these case management concerns, the court's view is that a more robust response is needed. Geosyntec cited a case at the hearing that supports this approach. *See North American Lubricants Co. v. Terry*, No. CIV S-11-1284 KJM GGH, 2011 WL 5828232 (E.D. Cal. Nov. 18, 2011). The case involved a plaintiff wholesale distributor of car motor oil which sold to retail businesses that used the products and similar products manufactured by plaintiff's competitors to (presumably) service their own customers' cars. *Id.* at *1. The plaintiff's employees formed a new competitor company and solicited the plaintiff's customers using the plaintiff's customer contact information, customer account information, and sales and pricing data (and sold products with confusingly similar trade dress). *Id.* In the resulting lawsuit by the plaintiff wholesale distributor against the former employees, the plaintiff identified as trade secrets its database (3,500

ORDER (C 12-02973 TEH (LB))                          6

email addresses of prospects), its business model, marketing materials, and certain downloaded files that apparently the former employees took. *Id.* at *6. As to the database, providing it pursuant to a protective order was sufficient at that stage of the litigation, which was six months after the complaint was filed. *Id.* As to the rest, the interrogatory asked for a description in detail of the name of the customer, information about the vendor that was the trade secret (e.g., contact person, contact information, etc.). *Id.* The court held that a boilerplate list of "customer lists, business plans, formula's [sic], patterns, compilations, programs, devices, methods, techniques or processes and other information that has derived economic value" was an insufficient response. *Id.* Instead, it ordered the boilerplate items to be "described with particularity, e.g., by author(s), date of creation, subject matter, basis for trade secret claim, etc.) or be removed from the response to this interrogatory. Voluminous files or items may be reasonably categorized, but the descriptions must be sufficiently specific to notify defendants of the subject matter and matter and basis of the trade secrets claims." *Id.*

As the court pointed out in the hearing, a practical issue with cases such as this is that the court does not have access to the purported trade secrets. That being said, the sheer volume coupled with blanket categorizations is enough of a record for the court to conclude that the detail is not sufficient, and that further responses would "contribute meaningfully" to clarifying the issues in the case, narrowing the scope of the dispute, and setting up settlement discussion. *See In Re Convergent Techns. Sec. Litig.*, 108 F.R.D. at 337. The question is the timing, especially given that courts are reluctant to order contention interrogatories until after discovery is substantially complete. *See id.*

The court orders the following approach. To aid settlement, each party will pick five representative trade secrets, and AMEC will provide trade-secret-specific answers to the contention interrogatories. The parties must pick their respective trade secrets by noon on Monday, July 29, 2013, and AMEC will provide its answers by noon on Friday, August 2, 2013. The parties may stipulate to a different time period.

Then AMEC can work to narrow its trade secrets and provide answers for the remainder of its trade secret claims. The court's view on this record is that the appropriate timing is Friday, October 18, 2013, which leaves some time for any mop-up fact discovery. It also seems likely that this is the

ORDER (C 12-02973 TEH (LB))            7

necessary work for trial and expert reports. That being said, the parties have a better understanding of their discovery and designations than the court, and it may be that the interplay between experts and interrogatory answers militates in favor of a different timing that will be even more useful to both parties. Within two weeks of the mediation, or at such other time that the parties stipulate to, the parties must meet and confer by telephone initially (and in person thereafter) (and not solely by email) about the timing of contention interrogatories and expert disclosures. The court's view on this record is that if the parties cannot agree, the timing has to be around the time fact discovery closes to ensure an orderly progression to trial and to facilitate the second attempt at settlement before the pretrial conference (as the district court ordered).

As to the economic harm, the court appreciates AMEC's argument that its damages theory is what the expert disclosures will show. Geosyntec said that it is not looking now for the complete damages information and instead needs some understanding of the particular harms that AMEC suffered such as the loss of a client or project. Joint Letter Brief, ECF No. 45 at 5. The court agrees that client- or project-specific harm is appropriate.

## II. GEOSYNTEC'S RESPONSES

### A. Geosyntec's Responses Regarding Solicitation of AMEC Employees

The first issue is that Geosyntec does not want to disclose information about AMEC employees that it solicited and did not hire. Joint Letter Brief, ECF No. 46 at 1. It argues that the information is not relevant to a claim or defense under Rule 26. *Id.* AMEC responds that the complaint's allegations show a scheme to hire employees, Geosyntec solicited AMEC employees for business plans of current AMEC clients with revenue potential, and it is relevant if Geosyntec did not hire AMEC employees because they could not bring business. *Id.* at 2.

The complaint is about employees who left AMEC and either took information with them that Geosyntec used (as alleged in detail in the complaint) or disrupted contracts even though they did not take information (as with the allegations about the Univar contracts on page 51). The court's view is that given the burdens that Geosyntec identified, merely soliciting employees who are not hired is not enough. Also, AMEC's argument about the lack of ability to bring a book of business can be illuminated through depositions of Geosyntec's employees who solicited AMEC's

employees. At least some of those employees are being deposed before the mediation, and Geosyntec can identify and disclose information as it prepares witnesses. If Geosyntec solicited AMEC's employees and obtained protected information from them without hiring them, that information is relevant to a claim or defense given the broad allegations about raiding and using protected information to get an advantage. This is sufficient discovery for now. If the Geosyntec employees with relevant information are the roughly 12 recruiters discussed in the next section, it may not be an excessive burden post-mediation and post-deposition for Geosyntec to obtain additional information pursuant to the process in the next section.

**B**. **Geosyntec's Response to Interrogatory Number 5 Limited to Documents**

The issue here is that Geosyntec produced only documents about communications with AMEC employees and did not produce oral communications. It says it is a burden to reach out to thousands of employees. AMEC points out that Geosyntec identified certain employees involved in recruitment (roughly 12 according to counsel at the hearing), and it is not burdensome to reach out to those employees and the former AMEC employees. Joint Letter Brief, ECF No. 46 at 4. Another relevant fact is that 10 Geosyntec employees will be deposed before the August 7 mediation.

Given the burdens at play, the illumination that depositions will provide, and the timing of the depositions *vis à vis* the mediation, the depositions are a sufficient discovery device (for now) for the oral solicitations. After the depositions and the mediation, it does not seem an excessive burden for Geosyntec to obtain from a small number of employees their oral communications. Again, on this record, the court cannot tell who the employees are and what relevant information they might have. The parties should follow the meet and confer schedule discussed on page 8 to identify, contextualize, and prioritize how this additional information can be provided.

**C. Geosyntec's Custodian and Search Terms for the E-Discovery**

AMEC argues that Geosyntec left out obvious custodians and search words. Geosyntec responds that its searches are too broad with a hit rate of 8% and that it had to do work to narrow its terms to produce the 200,000 responsive pages it has produced so far.

The court made some observations at the hearing about how one should stage ESI, particularly email searches (which – if too broad – are relatively useless ways of getting at the smoking gun

ORDER (C 12-02973 TEH (LB))          9

emails). The parties of course know their discovery better. The parties agreed to meet and confer and try to work things out.

## CONCLUSION

This disposes of ECF Nos. 45 and 46.

**IT IS SO ORDERED.**

Dated: July 26, 2013

_____
LAUREL BEELER
United States Magistrate Judge